UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

JOAQUIN ORTIZ, JOSE TORRES, NEYL GARCIA, JOSE B. CABRERA GOMEZ, CLAUDIO A. PAULINO DIAZ, LEONARDO A. PACHECO-CEPEDA, and ISAUL HERNANDEZ, On Behalf of Themselves and All Others Similarly Situated,

                           Plaintiffs,

          -against-

EMERALD EQUITY GROUP, LLC, ARCHROCK, LLC D/B/A ARCHROCK MANAGEMENT, STAFF-RBX, LLC, STAFF-EUN, LLC, STAFF-EBX LLC, 147 BRUCKNER BOULEVARD REALTY, LLC, BRONX 495 EAST 188TH STREET, LLC, BRONX 495 EAST 188TH STREET, LP, BRONX 346 EAST 146 EAST 146TH STREET, LP, BRONX 2650 MARION AVENUE, LP, BRONX 232 CYPRESS AVENUE, LP, BRONX 214 EAST 168TH STREET LP, and MOSHE STAHL, Individually,

                           Defendants.

-------------------------------------------------------------------X

Dkt. No.:

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

**Collective Action and Class Action Complaint**

       Plaintiffs Joaquin Ortiz, Jose Torres, Neyl Garcia, Jose B. Cabrera Gomez, Claudio A. Paulino Diaz, Leonardo A. Pacheco-Cepeda and Isaul Hernandez ("Plaintiffs"), by and through their attorneys, Joseph & Norinsberg, LLC, allege as follows:

**NATURE OF CASE**

       1.     Plaintiffs bring this action on behalf of themselves and all others similarly situated for Defendants' systemic and continuous violations of: (i) the minimum wage provisions of the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 206 *et seq*. ("FLSA"); (ii) the overtime provisions of the FLSA, as amended, 29 U.S.C. §§ 201 *et seq*.; (iii) the overtime provisions of the New York Labor Law ("NYLL") and Comp. Codes R. & Regs Tit. 12, § 142-2.2 ("NYCCRR");

(iv) the spread of hours requirement as contained in the NYCCRR; (v) the requirement that employers furnish employees with a written statement at the time of hiring containing specific categories of information under the NYLL § 195(1), codified as the New York Wage Theft Prevention Act (the "NYWTPA"); (vi) the requirement that employers furnish employees with wage statements on each payday containing specific categories of accurate information under the NYLL § 195(3); and (vii) any other cause(s) of action that can be inferred from the facts set forth herein.

## PRELIMINARY STATEMENT

2.      Plaintiffs are superintendents and handymen who have worked for Defendants at various times between 2016 and the present. Throughout the course of their employment, Plaintiffs regularly worked as many as seven days a week, and well over 40 hours each week -- including the requirement that they be on-call 24 hours a day, seven days a week to deal with any issues in their assigned buildings - - some without receiving minimum wages, and all without receiving overtime compensation as required by law.

3.      In addition to work performed by Plaintiffs as superintendents and handymen, Plaintiffs are required to perform "side jobs", outside of their scheduled work hours, consisting of nonstandard repairs and renovations on Defendants' properties. The performance of the side jobs was essential as Defendants advertise to their customers that they "maintain[ ] an exclusive network of architectural crews, design professional, and construction teams, who specialize in the restoration and rehabilitation…"See http://www.emeraldequitygrp.com/philosophy.html (last viewed on July 26, 2018). As a result, Plaintiffs performed several roles during the time of their employment. By blurring the line between the various occupations and failing to pay Plaintiffs'

overtime, Defendants have saved themselves tens of thousands of dollars at the expense of Plaintiffs.

4.    Upon information and belief, the corporate Defendants listed herein are interrelated and operate as an enterprise, owning and managing over three thousand (3,000) residential units in buildings located throughout the City of New York.  In order to further their unlawful practices, Defendants deliberately engaged in the creation of new corporate entities, artificial real estate transactions, and other methods of intentional dissembling, in order to conceal the associations between Defendants and avoid their widespread FLSA and NYLL violations from being identified and collectively redressed.

5.    Plaintiffs bring this action on behalf of themselves and all others similarly situated, both current and former employees, pursuant to the Fair Labor Standards Act ("FLSA"), and specifically the collective action provision of the FLSA, to remedy violations of the wage and hour provisions of the FLSA by Defendants that have deprived Plaintiffs, and others similarly situated superintendents and handymen, of their lawful wages.

6.    Plaintiffs also bring this action on behalf of themselves and a class of similarly situated current and former superintendents and handymen of Defendants, pursuant to Fed. R. Civ. P. 23, for violations of the NYLL.

## JURISDICTION AND VENUE

7.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201 *et seq.*

8.    The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common

nucleus of operative facts, such that they form part of the same case or controversy under Article III of the United States Constitution.

9.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) (2), as all actions comprising the claims for relief occurred within this judicial district, and pursuant to 28 U.S.C. § 1391(b) (1), as the Defendants reside within this judicial district.

10.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## DEMAND FOR A JURY TRIAL

11.     Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

12.     Plaintiffs Joaquin Ortiz, Alberto Gutierrez Jose Torres, Neyl Garcia, Jose B. Cabrera Gomez, Claudio A. Paulino Diaz, Leonardo A. Pacheco-Cepeda, and Isaul Hernandez and others similarly situated, are individuals who, at all times relevant to this Complaint, have been residents of the City and State of New York.

13.     At all times relevant to this Complaint, Plaintiffs were "employees" of Defendants within the meaning of the FLSA, 29 USC § 203(e), and NYLL § 190(2).

*Emerald Equity Group, LLC*

14.     At all times relevant to this action, Defendant Emerald Equity Group, LLC ("Emerald"), was and is, a domestic business corporation with its principal place of business located at One Battery Park Plaza, New York, New York and 266 Broadway Suite 602, Brooklyn, New York.

15.     At all times relevant to this action, Emerald was and is engaged in interstate commerce, as defined by the FLSA, and Defendant's qualifying annual business exceeds $500,000.00, the combination of which subjects Emerald to the FLSA's overtime requirements.

16.     Emerald is a real estate acquisition company with a portfolio comprising of over three thousand (3,000) residential units in buildings located throughout New York.  Emerald designated all management responsibilities for its residential properties to ArchRock, LLC d/b/a/ ArchRock Management ("ArchRock").  See https://www.emeraldequitygrp.com/about.html/ (last viewed on July 26, 2018).

17.     Emerald is the parent company of ArchRock, and in that capacity, Emerald is responsible for all management responsibilities.

18.     At all times herein, Plaintiffs worked as superintendents and handymen for residential properties owned by Emerald and managed by ArchRock and Emerald.

***ArchRock, LLC D/B/A ArchRock Management.***

19.     At all times relevant to this action, Defendant ArchRock was and is a domestic business corporation, with its principal place of business located at One Battery Park Plaza, New York, New York, associated with Emerald.

20.     At all times relevant to this action, ArchRock was and is engaged in interstate commerce, as defined by the FLSA, and Defendant's qualifying annual business exceeds $500,000.00, the combination of which subjects ArchRock to the FLSA's overtime requirements.

21.     Emerald designated all management responsibilities for its residential properties to ArchRock, and in that capacity ArchRock is responsible for all management responsibilities.  See https://www.emeraldequitygrp.com/about.html/  (last viewed on July 26, 2018).

22.     At all times herein, Plaintiffs worked as superintendents and handymen for residential properties owned by Emerald and managed by ArchRock and Emerald.

***Staff-RBX, LLC***

23.     At all times relevant to this action, Defendant Staff-RBX, LLC ("RBX"), was and is, a domestic limited liability company with its principal place of business located at 266 Broadway, Suite 602, Brooklyn, New York, associated with Emerald and/or ArchRock.

24.     Plaintiffs' paystubs indicate that RBX was one of the entities that issued compensation to Plaintiffs during the relevant time period.

***Staff-EUN, LLC***

25.     At all times relevant to this action, Defendant Staff-EUN, LLC ("EUN"), was and is, a domestic limited liability company with its principal place of business located at 266 Broadway, Suite 602, Brooklyn, New York, associated with Emerald and/or ArchRock.

26.     Plaintiffs' paystubs indicate that EUN was one of the entities that issued compensation to Plaintiffs during the relevant time period.

***Staff-EBX, LLC***

27.     At all times relevant to this action, Defendant Staff-EBX, LLC ("EBX"), was and is, a domestic limited liability company with its principal place of business located at 266 Broadway, Suite 602, Brooklyn, New York, associated with Emerald and/or ArchRock.

28.     Plaintiffs' paystubs indicate that EBX was one of the entities that issued compensation to Plaintiffs during the relevant time period.

***147 Bruckner Boulevard Realty, LLC***

29.     At all times relevant to this action, Defendant 147 Bruckner Boulevard Realty LLC ("147 Bruckner"), was and is, a domestic limited partnership with its principal place of business

located at 266 Broadway, Suite 602, Brooklyn, New York, associated with Emerald and/or ArchRock.

30.     Plaintiffs' paystubs indicate that 147 Bruckner was one of the entities that issued compensation to Plaintiffs during the relevant time period.

***Bronx 495 East 188th Street, LLC***

31.     At all times relevant to this action, Defendant 495 East 188th Street, LLC ("495 LLC"), was and is, a domestic limited partnership with its principal place of business located at 266 Broadway, Suite 602, Brooklyn, New York, associated with Emerald and/or ArchRock.

32.     Plaintiffs' paystubs indicate that 495 LLC was one of the entities that issued compensation to Plaintiffs during the relevant time period.

***Bronx 495 East 188th Street, LP***

33.     At all times relevant to this action, Defendant Bronx 495 East 188th Street, LP ("495 LP"), was and is, a domestic limited partnership with its principal place of business located at 266 Broadway, Suite 602, Brooklyn, New York, associated with Emerald and/or ArchRock.

34.     Plaintiffs' paystubs indicate that 495 LP was one of the entities that issued compensation to Plaintiffs during the relevant time period.

***Bronx 346 East 146 East 146th Street, LP***

35.     At all times relevant to this action, Defendant Bronx 346 East 146th Street, LP ("Bronx 346"), was and is, a domestic limited partnership with its principal place of business located at 266 Broadway, Suite 602, Brooklyn, New York, associated with Emerald and/or ArchRock.

36.     Plaintiffs' paystubs indicate that Bronx 346 was one of the entities that issued compensation to Plaintiffs during the relevant time period.

**Bronx 2650 Marion Avenue, LP**

37.    At all times relevant to this action, Defendant Bronx 2650 Marion Avenue, LP ("Bronx 2650"), was and is, a domestic limited partnership with its principal place of business located at 266 Broadway, Suite 602, Brooklyn, New York, associated with Emerald and/or ArchRock.

38.    Plaintiffs' paystubs indicate that Bronx 2650 was one of the entities that issued compensation to Plaintiffs during the relevant time period.

**Bronx 232 Cypress Avenue, LP**

39.    At all times relevant to this action, Defendant Bronx 232 Cypress Avenue, LP ("Bronx 232") was and is a domestic limited partnership with its principal place of business located at 266 Broadway, Suite 602, Brooklyn, New York, associated with Emerald and/or ArchRock.

40.    Plaintiffs' paystubs indicate that Bronx 232 was one of the entities that issued compensation to Plaintiffs during the relevant time period.

**Bronx 214 East 168th Street, LP**

41.   At all times relevant to this action, Defendant Bronx 214 East 168th Street, LP ("Bronx 214"), was and is, a domestic limited partnership with its principal place of business located at 266 Broadway, Suite 602, Brooklyn, New York, associated with Emerald and/or ArchRock.

42.   Plaintiffs' paystubs indicate that Bronx 214 was one of the entities that issued compensation to Plaintiffs during the relevant time period.

**Moshe Stahl**

43.    At all times hereinafter mentioned, Defendant Moshe Stahl ("Stahl"), was and is, a property manager, supervisor, and/or member and/or managing member of Emerald and/or

ArchRock, and/or the associated entities which are partners, subsidiaries, parent companies, shells, alter-egos, etc., of Emerald and/or ArchRock.

44.     At all relevant times herein, Stahl actively participated in the day-to-day operations of Emerald and/or ArchRock and was an "employer" pursuant to the FLSA, 29 U.S.C. §203(d), and the Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is, therefore, jointly and severally liable with the corporate Defendants listed herein.

45.     Stahl has or had management responsibilities over properties owned and managed by Emerald and/or ArchRock.  Specifically, Stahl directly managed the properties listed herein and had direct contact with the Named Plaintiffs.

46.     The above-referenced corporate and individual Defendants are hereinafter referred to collectively as "Defendants."

47.     At all times hereinafter mentioned, Defendants exercised control over the terms and conditions of Plaintiffs' employment, in that Defendants had the power to: (i) hire and fire employees; (ii) determine rates and methods of pay; (iii) determine work schedules; (iv) supervise work and control of the employees, including the Plaintiffs herein; and (v) otherwise affect the quality of the employees' work conditions and employment. Accordingly, Defendants were the "employer(s)" of Plaintiffs within the meaning of the FLSA, 29 USC § 203(d), and NYLL § 190(3).

## COLLECTIVE ACTION ALLEGATIONS

48.     Plaintiffs bring their FLSA claims on behalf of themselves and all others similarly situated persons who work, or have worked, for Defendants and their associated entities as superintendents and handymen at any point over the three years preceding the filing date of this

Complaint, and who did not receive: (i) minimum wage for each hour worked; and/or (ii) overtime pay for all hours worked in excess of forty (40) hours per week. (hereinafter, the "FLSA Collective Action").

49.    Defendants are liable under the FLSA for, *inter alia*, failing to pay minimum wages and overtime premiums at one-and-one-half times the regular rate of pay. There are numerous similarly situated current and former employees of Defendants who have been similarly underpaid in violation of the FLSA, and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join.

50.    The persons in the FLSA Collective Action identified above, including both current and former employees over the relevant period, is unknown, and facts on which the calculation of that number can be based are presently within the sole control of Defendants. Upon information and belief there are at least 100 FLSA members, and there could be significantly more.

51.    The precise number of FLSA collective action members should be readily available from a review of the Defendants' personnel, scheduling, time and payroll records, and from input received from the collective action as part of the notice and "opt-in" process provided by 29 U.S.C § 216(b).

## NEW YORK CLASS ACTION ALLEGATIONS

52.    Plaintiffs bring this action on behalf of themselves and on behalf all others similarly situated class of persons under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), defined to include: all superintendents and handymen, employed by Defendants, who did not receive: (i) minimum wage for each hour worked; and/or (ii) overtime premium pay for all hours worked in excess of forty (40) hours per week, in violation of the NYLL during the statutory period (hereinafter, the "New York Class").

53.    *Numerosity:* The members of the Rule 23 Class are so numerous that joinder of all members in the case would be impracticable. Plaintiffs reasonably estimate that there are at least 100 Class members who reside and work in New York. The precise number of Class members should be readily available from a review of Defendants' personnel and payroll records.

54.    *Commonality/Predominance:* There is a well-defined community of interest among the Rule 23 Class members and common questions of *both* law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

a.  Whether Defendants employed and/or jointly employed Plaintiffs and the New York Class under New York law;

b.  Whether Defendants failed to pay Plaintiffs and the New York Class the statutorily-mandated minimum rate of pay for each hour worked;

c.  Whether Defendants failed to pay Plaintiffs and the New York Class the statutorily-mandated rate of pay of one-and-one-half times the regular rate of pay for each hour worked in excess of forty (40) hours per week;

d.  Whether Defendants violated the NYWTPA by failing to provide Plaintiffs and the New York Class with a written statement upon hiring, and annually, as required by NYLL § 195(1);

e.  Whether Defendants violated the NYWTPA by failing to provide Plaintiffs and the New York Class with sufficiently detailed wage statements with each payment, as required by NYLL § 195(3);

f.  Whether Defendants failed to pay Plaintiffs and the New York Class for an extra hour's work when their workdays lasted more than 10 hours;

g.  Whether Defendants should be required to pay compensatory damages, attorneys' fees, costs, and interest for violating the NYLL; and

h.  Whether Defendants' violations were willful.

55.    *Typicality:* Plaintiffs' claims are typical of those of the Rule 23 Class in that Plaintiffs and all other members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices. Plaintiffs' claims arise from the same

policies, practices, and course of conduct as all other Rule 23 Class members' claims and Plaintiffs' legal theories are based on the same legal theories as all other Rule 23 Class members, as detailed above.  Further, as part of their scheme to circumvent overtime provisions of the NYLL, Defendants required Plaintiffs and New York Class to perform "side jobs" outside of their regularly scheduled hours and did not pay them lawful wages for these side jobs.

56.     *Adequacy:* Plaintiffs will fully and adequately protect the interests of the Rule 23 York Class. Furthermore, Plaintiffs have retained counsel who are qualified and experienced in the litigation of wage-and-hour class actions.

57.     *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, *inter alia*, it is economically unfeasible for the Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

58.     The case will be manageable as a class action because Defendants should have payroll systems that will allow the wage-and-hour facts and damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate.

59.     Defendants have acted on grounds generally applicable to the Class, thereby making relief, including declaratory and/or injunctive relief, appropriate for the Class.

## CLASSWIDE FACTUAL ALLEGATIONS UNDER FLSA AND NYLL

**Failure to Lawfully Compensate Minimum Wages, Overtime Wages and Other Violations.**

60.     Plaintiffs bring FLSA and NYLL claims on behalf of themselves and all others similarly situated superintendents and handymen ("Class") employed by Defendants.

61.     Defendant Emerald is a real estate company specializing in multi-residential acquisitions.  Through Emerald's subsidiary, ArchRock, a property management business and other associated corporate entities listed as Defendants herein, Defendants jointly own and manage over three thousand (3,000) residential units in buildings located throughout the City of New York. Since ArchRock has been designated to manage all of Emerald's buildings, it employs scores of superintendents and handymen.

62.     Upon information and belief, Defendants have employed more than one hundred superintendents and handymen during the last six years.

63.     As superintendents and handymen, the job duties Plaintiffs and of the Class included, *inter alia*: a) collecting and taking out garbage on a daily basis; b) making minor apartment repairs and renovations including painting and roofing; c) fumigating the apartments; d) minor electrical work; e) maintaining building boilers; f) checking hallways for cleanliness and maintenance issues; g) minor tiling; h) minor plumbing; i) minor carpentry work; j) cleaning inside and outside the buildings; and k) addressing tenants' concerns.

64.     Defendants willfully failed to pay some Plaintiffs and the Class minimum wages for each hour worked as prescribed by provisions of the FLSA and the NYLL.

65.     Additionally, Defendants have systematically underreported the number of hours worked by Plaintiffs and Class Members and effectively omitted their overtime hours from any payroll records. Thus, Defendants failed to provide compensation to the Plaintiff for their overtime hours, at any rate, let alone the statutorily-mandated rate of pay of no less than one-and-one-half times the regular rate of pay for each hour worked in excess of forty (40) hours per week.

66.     Defendants also did not compensate the legally mandated spread-of-hours-pay for hours pay for hours Plaintiffs and the Class worked in excess of ten (10) hours a day.

13

67.     At all relevant times, Defendants failed to keep complete and/or accurate records of the hours worked by and wages paid to Plaintiffs and Class Members.

68.     At all relevant times, Defendants failed to post and/or keep posted a notice explaining employees' rights under the FLSA, in violation of 29 C.F.R. § 516.4.

69.     Plaintiffs were also required to complete mandatory "side jobs" consisting of nonstandard repairs and maintenance on Defendants' properties.  In an attempt to circumvent federal and state overtime laws, Defendants required that side jobs be performed outside of Plaintiffs' and the Class' regularly scheduled hours.  Furthermore, Defendants frequently failed to compensate Plaintiffs and the Class for the side jobs they performed, and then the Defendants offered compensation, it was far below market value.

70.     Upon information and belief, Defendants' unlawful conduct as described herein is pursuant to a policy or practice of attempting to minimize labor costs by violating the FLSA and NYLL.

71.     Defendants' unlawful conduct has been widespread, repeated, consistent, and willful.

## **INDIVIDUAL ALLEGATIONS**
### **Joaquin Ortiz ("Mr. Ortiz")**

72.     Plaintiff Mr. Ortiz worked for Defendants as a superintendent and handyman since February 2018.

73.     ArchRock hired Mr. Ortiz as a superintendent and handyman for two residential buildings owned and/or managed by Defendants: (i) 346 E. 146th Street, Bronx, New York; and (ii) 773 Melrose Avenue, Bronx, New York.

74.     Mr. Ortiz lived in the basement apartment of 346 E. 146th Street, Bronx, New York. He lived in the basement for the sole purpose of being available to provide services on a twenty-

four (24) hour basis and would not live there but for the fact that he was required to be on site at all times to meet the requirements of his job.

75.     As a superintendent and handyman, Mr. Ortiz's duties, inter alia are: a) making minor apartment repairs and renovations including painting and roofing; b) fumigating the apartments; c) minor electrical work; d) maintaining building boilers; e) checking hallways for cleanliness and maintenance issues; f) minor tiling; g) minor plumbing; h) minor carpentry work; i) cleaning inside and outside the buildings; and j) addressing tenants' concerns.

76.     Throughout his employment with Defendants, Mr. Ortiz has always worked and continues to work in excess of forty (40) hours per week, working on average seventy-five (75) hours per week in total – which equals thirty-five (35) hours per week of overtime work.

77.     In addition to his hours actively working, Mr. Ortiz was required to be on-call to deal with any situation that arose in the buildings twenty-four (24) hours a day, seven (7) days a week.

78.     Despite the foregoing schedule, Defendants deliberately underpaid Mr. Ortiz, who at most received weekly compensation in the sum of two hundred and sixty dollars ($260.00) in express violation of the Federal and State minimum wage laws.

79.     Furthermore, Mr. Ortiz did not receive any payment for his overtime hours, let alone the statutorily-mandated rate of one-and-one-half times the regular rate of pay for each hour worked in excess of forty (40) hours per week.

80.     Further, Mr. Ortiz was not compensated the legally mandated spread-of-hours-pay for hours he worked in excess of ten (10) hours a day.

81.     In a willful scheme to camouflage their unlawful practices, on a weekly basis, Defendants requested that Mr. Ortiz sign and submit timesheets which falsely stated that he had

worked forty (40) hours per week, and which failed to document all the hours he actually worked. Mr. Ortiz initially signed the timesheets, believing he had no alternative. Eventually, Mr. Ortiz refused to sign the timesheets since they were inaccurate.

82.    Subsequently, Defendants implemented a new time-keeping system and directed Mr. Ortiz to send his hours by text message to a cell phone number designated by Defendants. Once again, Defendants' pay was inconsistent with the hours Mr. Ortiz worked and recorded via text messages.

83.    Additionally, in a ploy to obfuscate Mr. Ortiz's hours, and to circumvent overtime provisions of the FLSA and NYLL, Defendants regularly assigned Mr. Ortiz with numerous "side jobs" which were a mandatory part of his employment. Side jobs often involved major immediate repairs for tenants or rehabilitating rental apartments before new tenants moved in.

84.    Defendants required Mr. Ortiz to submit invoice statements and/or work orders with a description of the work needed to be performed and a fair price for same, but these invoices were a sham, as Defendants would never pay the requested sum. Instead, Defendants would arbitrarily underpay or fail entirely to compensate Mr. Ortiz fair market rates.

85.    Mr. Ortiz consistently complained to Stahl as to the outstanding balances for side jobs. In response, Stahl would lie to Mr. Ortiz by promising to pay him on a later date, or silence him by saying "we could get someone else to do your job."

86.    Frequently, Defendants required Mr. Ortiz to perform these side jobs outside of Mr. Ortiz's regularly scheduled work hours, whereby he should have been paid for those hours at the mandatory statutory rate for overtime hours.

87.    In sum, in willful disregard of the FLSA, the NYLL, and the NYCCRR, Defendants failed to pay Mr. Ortiz the statutorily prescribed minimum hourly wage for all the hours he worked

and overtime premiums at one-and-one-half times the regular rate of pay for all hours he worked in excess of forty (40) per week.  Additionally, in violation of the NYWTPA, Defendants failed to maintain true and accurate payroll records, among other violations.

## Jose Torres ("Mr. Torres")

88.     Plaintiff Mr. Torres worked for Defendants as a superintendent and handyman from March 2016 until on or about February 2018.

89.     ArchRock hired Mr. Torres as the superintendent and handyman for six residential buildings owned and/or managed by Defendants: (i) 349 E. 193rd, Bronx, New York; (ii) 311 E. 193rd, Bronx, New York; (iii) 301 E. 193rd, Bronx, New York; (iv) 2650 Marion Avenue, Bronx, New York; (v) 2654 Marion Avenue, Bronx, New York.; and (vi) 2605 Marion Avenue, Bronx, New York.

90.     Mr. Torres' duties as a superintendent and handyman included but were not limited to: a) collecting and taking out garbage on a daily basis; b) making minor apartment repairs and renovations including painting and roofing; c) fumigating the apartments; d) minor electrical work; e) maintaining building boilers; f) checking hallways for cleanliness and maintenance issues; g) minor tiling; h) minor plumbing; i) minor carpentry work; j) cleaning inside and outside the buildings; and k) addressing tenants' concerns.

91.     During his employment with Defendants, Mr. Torres worked in excess of forty (40) hours per week, working on average fifty-five (55) hours per week in total – which equals fifteen (15) hours per week of overtime work.

92.     In addition to his hours actively working, Mr. Torres was required to be on-call to deal with any situation or need that arose in the buildings twenty-four (24) hours a day, seven (7) days a week.

93.     Despite the fact that Mr. Torres worked approximately 55 hours per week, Mr. Torres did not receive any payment for his overtime hours, let alone the statutorily-mandated rate of no less than one-and-one-half times the regular rate of pay for each hour worked in excess of forty (40) hours per week.

94.     Further, Mr. Torres was not compensated the legally mandated spread-of-hours-pay for hours pay for hours he worked in excess of ten (10) hours a day.

95.     In a willful scheme to camouflage their unlawful practices, on a weekly basis, Defendants requested Mr. Torres to sign and submit timesheets which falsely stated that he had worked forty (40) hours per week, and which failed to document all the hours he actually worked. Mr. Torres submitted the timesheets, believing he had no alternative.  However, even at the insistence of Defendants, Mr. Torres refused to continue to sign the timesheets he submitted since they were inaccurate.

96.     Additionally, in a ploy to obfuscate Mr. Torres' hours, and to circumvent overtime provisions of the FLSA and NYLL, Defendants regularly assigned Mr. Torres with numerous "side jobs" which were a mandatory part of his employment.  Side jobs often involved major immediate repairs for tenants or rehabilitating rental apartments before new tenants moved in.

97.     Defendants required Mr. Torres to submit invoice statements and/or work orders with a description of the work needed to be performed and a price for same, but these invoices were a sham, as Defendants would never pay the requested sum.  Instead, Defendants would arbitrarily underpay or fail to compensate Mr. Torres fair market rates.

98.     Mr. Torres consistently complained to Stahl, as well as to other property managers, regarding outstanding balances for side jobs.  In response, they would lie to Mr. Torres he would be paid on a later date or silence him by saying "we could get someone else to do your job."

99.    Frequently, Defendants required Mr. Torres to perform to perform these side jobs outside of Mr. Torres' regularly scheduled work hours, whereby he should have been paid for those hours at the mandatory statutory rate for overtime hours.

100.    In sum, in willful disregard of the FLSA, the NYLL, and the NYCCRR, Defendants failed to pay Mr. Torres overtime premiums at one-and-one-half times the regular rate of pay. Additionally, in violation of the NYWTPA, Defendants failed to maintain true and accurate payroll records, among other violations.

### Neyl Garcia ("Mr. Garcia")

101.    Plaintiff Mr. Garcia worked for Defendants as a superintendent and handyman from March 2016 until on or about March 2018.

102.    ArchRock hired Mr. Garcia as a superintendent and handyman for two residential buildings owned and/or managed by Defendants: (i) 2705 Morris Avenue, Bronx, New York; and (ii) 2707 Morris Avenue, Bronx, New York.

103.    Mr. Garcia lived in the basement apartment of 2705 Morris Avenue, Bronx, New York.  He lived in the basement for the sole purpose of being available to provide services on a twenty-four (24)-hour basis, and would not have lived there but for the fact that he was required to be on site at all times to meet the requirements of his job.

104.    Mr. Garcia' duties as a superintendent and handyman included but were not limited to: a) collecting and taking out garbage on a daily basis; b) making minor apartment repairs and renovations including painting and roofing; c) fumigating the apartments; d) minor electrical work; e) maintaining building boilers; f) checking hallways for cleanliness and maintenance issues; g) minor tiling; h) minor plumbing; i) minor carpentry work; j) cleaning inside and outside the buildings; and k) addressing tenants' concerns.

105.    During his employment with Defendants, Mr. Garcia worked in excess of forty (40) hours per week, working on average seventy (70) hours per week in total – which equals thirty (30) hours per week of overtime work.

106.    In addition to his hours actively working, Mr. Garcia was required to be on-call to deal with any situation or need that arose in the buildings twenty-four (24) hours a day, seven (7) days a week.

107.    Despite working close to 70 hours per week, on average, Mr. Garcia did not receive any payment for his overtime hours, let alone the statutorily-mandated rate of one-and-one-half times the regular rate of pay for each hour worked in excess of forty (40) hours per week.

108.    Further, Mr. Garcia was not compensated the legally mandated spread-of-hours-pay for hours pay for hours he worked in excess of ten (10) hours a day.

109.    In a willful scheme to camouflage their unlawful practices, on a weekly basis, Defendants requested that Mr. Garcia sign and submit timesheets which falsely stated that he had worked thirty (30) hours which failed to account for all the hours he actually worked.  Mr. Garcia signed the timesheets, believing he had no alternative.  Subsequently, Defendants implemented a new time-keeping system and directed Mr. Garcia to send his hours by text message to a cell phone number designated by Defendants.  Once again, Defendants' pay was inconsistent with the hours Mr. Garcia worked and recorded via text messages.

110.    Additionally, in a ploy to obfuscate Mr. Garcia's hours, and to circumvent overtime provisions of the FLSA and NYLL, Defendants regularly assigned Mr. Garcia with numerous "side jobs" which were a mandatory part of his employment.  Side jobs often involved major immediate repairs for tenants or rehabilitating rental apartments before new tenants moved in.

111.     Defendants required Mr. Garcia to submit invoice statements and/or work orders with a description of the work needed to be performed and a price for same, but these invoices were a sham, as Defendants would never pay the requested sum.  Instead, Defendants would arbitrarily underpay or fail to compensate Mr. Garcia fair market rates.

112.     Mr. Garcia consistently complained to Stahl, as well as to other property managers, regarding the outstanding balances for side jobs.  In response, they would lie to Mr. Garcia that he would be paid on a later date, or silence him by saying "we could get someone else to do your job."

113.     Often Defendants required Mr. Garcia to perform these side jobs outside of Mr. Garcia's regularly scheduled work hours, whereby he should have been paid for those hours at the mandatory statutory rate for overtime hours.

114.     In sum, in willful disregard of the FLSA, the NYLL, and the NYCCRR, Defendants failed to pay Mr. Garcia overtime premiums at one-and-one-half times the regular rate of pay. Additionally, in violation of the NYWTPA, Defendants failed to maintain true and accurate payroll records, among other violations.

### Jose B. Cabrera Gomez ("Mr. Gomez")

115.     Plaintiff Mr. Gomez worked for Defendants as a superintendent and handyman from October 2016 until on or about May 2018.

116.     ArchRock hired Mr. Gomez as a superintendent and handyman for four residential buildings owned and operated by Defendants: (i) 320 Beekman Avenue, Bronx, New York; (ii) 232 Cypress Avenue, Bronx, New York; (iii) 627 E 141st Street, Bronx, New York; and (iv) 147 Bruckner Boulevard, Bronx, New York.

117.     Mr. Gomez lived in the basement apartment of 320 Beekman Avenue, Bronx, New York.   He lived in the basement for the sole purpose of being available to provide services on a

twenty-four (24) hour basis and would not have lived there but for the fact that he was required to be on site at all times to meet the requirements of his job.

118.    Mr. Gomez's duties as a superintendent and handyman included but were not limited to: a) collecting and taking out garbage on a daily basis; b) making minor apartment repairs and renovations including painting and roofing; c) fumigating the apartments; d) minor electrical work; e) maintaining building boilers; f) checking hallways for cleanliness and maintenance issues; g) minor tiling; h) minor plumbing; i) minor carpentry work; j) cleaning inside and outside the buildings; and k) addressing tenants' concerns.

119.    During his employment with Defendants, Mr. Gomez worked in excess of forty (40) hours per week, working on average sixty-one (61) hours per week in total – which equals twenty-one (21) hours per week of overtime work.

120.    In addition to his hours actively working, Mr. Gomez was required to be on-call to deal with any situation or need that arose in the buildings twenty-four (24) hours a day, seven (7) days a week.

121.    Despite working sixty-one hours per week, on average, Mr. Gomez did not receive any payment for his overtime hours, let alone the statutorily- mandated rate of one-and-one-half times the regular rate of pay for each hour worked in excess of forty (40) hours per week.

122.    Mr. Gomez was not compensated the legally mandated spread-of-hours-pay for hours pay for hours he worked in excess of ten (10) hours a day.

123.    In a willful scheme to camouflage their unlawful practices, on a weekly basis, Defendants requested that Mr. Gomez sign and submit timesheets which falsely stated that he had worked forty (40) hours and failed to account for all the hours he actually worked.    At the

beginning of his employment, Mr. Gomez signed the timesheets, believing he had no alternative. Eventually, Mr. Gomez refused to continue to sign the timesheets since they were inaccurate.

124.    Additionally, in a ploy to obfuscate Mr. Gomez's hours, and to circumvent overtime provisions of the FLSA and NYLL, Defendants regularly assigned Mr. Gomez with numerous "side jobs" which were a mandatory part of his employment.  Side jobs often involved major immediate repairs for tenants or rehabilitating rental apartments before new tenants moved in.

125.    Defendants required Mr. Gomez to submit invoice statements and/or work orders with a description of the work needed to be performed and a price for same, but these invoices were a sham, as Defendants would never pay the requested sum.  Instead, Defendants would arbitrarily underpay or fail to compensate Mr. Gomez fair market rates.

126.    Mr. Gomez consistently complained to Stahl, and other property managers, as to the outstanding balances for side jobs.  In response, Stahl and other property managers would lie to Mr. Gomez that he would be paid on a later date or silence him by saying "we could get someone else to do your job."

127.    Often Defendants required Mr. Gomez to perform to perform these side jobs outside of Mr. Gomez's regularly scheduled work hours, whereby he should have been paid for those hours at the mandatory statutory rate for overtime hours.

128.    In sum, in willful disregard of the FLSA, the NYLL, and the NYCCRR, Defendants failed to pay Mr. Gomez overtime premiums at one-and-one-half times the regular rate of pay. Additionally, in violation of the NYWTPA, Defendants failed to maintain true and accurate payroll records, among other violations.

### Claudio A. Paulino Diaz ("Mr. Diaz")

129.    Plaintiff Mr. Diaz worked for Defendants as a superintendent and handyman from March 2016 until on or about May 2018.

130.    Defendants hired Mr. Diaz as a superintendent and handyman for one residential building owned and operated by Defendants located at 580 E 170th Street, Bronx, New York.

131.    Mr. Diaz's duties as a superintendent and handyman included but were not limited to: a) collecting and taking out garbage on a daily basis; b) making minor apartment repairs and renovations including painting and roofing; c) fumigating the apartments; d) minor electrical work; e) maintaining building boilers; f) checking hallways for cleanliness and maintenance issues; g) minor tiling; h) minor plumbing; i) minor carpentry work; j) cleaning inside and outside the buildings; and k) addressing tenants' concerns.

132.    During his employment with Defendants, Mr. Diaz worked in excess of forty (40) hours per week, working on average sixty (60) hours per week in total – which equals twenty (20) hours per week of overtime work.

133.    In addition to his hours actively working, Mr. Diaz was required to be on-call to deal with any situation or need that arose in the buildings twenty-four (24) hours a day, seven (7) days a week.

134.    Despite routinely working approximately 60 hours per week, Mr. Diaz did not receive any payment for his overtime hours, let alone the statutorily-mandated rate of one-and-one-half times the regular rate of pay for each hour worked in excess of forty (40) hours per week.

135.    Mr. Diaz was not compensated the legally mandated spread-of-hours-pay for hours pay for hours he worked in excess of ten (10) hours a day.

136.    In a willful scheme to camouflage their unlawful practices, on a weekly basis, Defendants requested that Mr. Diaz sign and submit a timesheet which falsely stated that he had worked forty (40) hours failed to account for all the hours he actually worked. Mr. Diaz signed the timesheets, despite the fact that they were inaccurate, believing he had no alternative.

137.    Additionally, in a ploy to obfuscate Mr. Diaz's hours, and to circumvent overtime provisions of the FLSA and NYLL, Defendants regularly assigned Mr. Diaz with numerous "side jobs" which were a mandatory part of his employment.  Side jobs often involved major immediate repairs for tenants or rehabilitating rental apartments before new tenants moved in.

138.    Defendants required Mr. Diaz to submit invoice statements and/or work orders with a description of the work needed to be performed and a price for same, but these invoices were a sham, as Defendants would never pay the requested sum.  Instead, Defendants would arbitrarily underpay or fail to compensate Mr. Diaz fair market rates.

139.    Mr. Diaz consistently complained to Stahl as to the outstanding balances for side jobs.  In response, Stahl would lie to Mr. Diaz that he would be paid on a later date or silence him by saying "we could get someone else to do your job."

140.    Often Defendants required Mr. Diaz to perform to perform these side jobs outside of Mr. Diaz's regularly scheduled work hours, whereby he should have been paid for those hours at the mandatory statutory rate for overtime hours.

141.    In sum, in willful disregard of the FLSA, the NYLL, and the NYCCRR, Defendants failed to pay Mr. Diaz overtime premiums at one-and-one-half times the regular rate of pay. Additionally, in violation of the NYWTPA, Defendants failed to maintain true and accurate payroll records, among other violations.

### Leonardo A. Pacheco-Cepeda ("Mr. Pacheco")

142.    Plaintiff Mr. Pacheco worked for Defendants as a superintendent and handyman from March 2016 until on or about February 2017.

143.    Defendants hired Mr. Pacheco as a superintendent and handyman for one residential building owned and operated by Defendants located at 214 E. 168th Street, Bronx, New York.

144.    Mr. Pacheco's duties as a superintendent and handyman included but were not limited to: a) collecting and taking out garbage on a daily basis; b) making minor apartment repairs and renovations including painting and roofing; c) fumigating the apartments; d) minor electrical work; e) maintaining building boilers; f) checking hallways for cleanliness and maintenance issues; g) minor tiling; h) minor plumbing; i) minor carpentry work; j) cleaning inside and outside the buildings; and k) addressing tenants' concerns.

145.    During his employment with Defendants, Mr. Pacheco worked in excess of forty (40) hours per week, working on average seventy-three (73) hours per week in total – which equals thirty-three (33) hours per week of overtime work.

146.    In addition to his hours actively working, Mr. Pacheco was required to be on-call to deal with any situation or need that arose in the buildings twenty-four (24) hours a day, seven (7) days a week.

147.    Despite routinely working more than seventy hours per week, Mr. Pacheco did not receive any payment for his overtime hours, let alone the statutorily-mandated rate of one-and-one-half times the regular rate of pay for each hour worked in excess of forty (40) hours per week.

148.    Mr. Pacheco was not compensated the legally mandated spread-of-hours-pay for hours pay for hours he worked in excess of ten (10) hours a day.

149.    In a willful scheme to camouflage their unlawful practices, on a weekly basis, Defendants requested that Mr. Pacheco sign and submit a timesheet which falsely stated that he had worked forty (40) hours failed to account for all the hours he actually worked. Mr. Pacheco

signed the timesheets, despite the fact that they were inaccurate, believing he had no alternative. Eventually, Mr. Pacheco refused to sign the timesheet since they were inaccurate.

150.    Additionally, in a ploy to obfuscate Mr. Pacheco's hours, and to circumvent overtime provisions of the FLSA and NYLL, Defendants regularly assigned Mr. Pacheco with numerous "side jobs" which were a mandatory part of his employment.  Side jobs often involved major immediate repairs for tenants or rehabilitating rental apartments before new tenants moved in.

151.    Defendants required Mr. Pacheco to submit invoice statements and/or work orders with a description of the work needed to be performed and a price for same, but these invoices were a sham, as Defendants would never pay the requested sum.  Instead, Defendants would arbitrarily underpay or fail to compensate Mr. Pacheco fair market rates.

152.    Mr. Pacheco consistently complained to Stahl as to the outstanding balances for side jobs.  In response, Stahl would lie to Mr. Pacheco that he would be paid on a later date or silence him by saying "we could get someone else to do your job."

153.    Frequently, Defendants required Mr. Pacheco to perform to perform these side jobs outside of Mr. Pacheco's regularly scheduled work hours, whereby he should have been paid for those hours at the mandatory statutory rate for overtime hours.

154.    In sum, in willful disregard of the FLSA, the NYLL, and the NYCCRR, Defendants failed to pay Mr. Pacheco overtime premiums at one-and-one-half times the regular rate of pay. Additionally, in violation of the NYWTPA, Defendants failed to maintain true and accurate payroll records, among other violations.

## Isaul Hernandez ("Mr. Hernandez")

155.    Plaintiff Mr. Hernandez has worked for Defendants as a superintendent and handyman since February 2016.

156.    Defendants hired Mr. Hernandez as a superintendent and handyman of two buildings owned and operated by Defendants: i) 741 Hunts Point, Bronx, New York; and ii) 743 Hunts Point, Bronx, New York.

157.    Mr. Hernandez lives in the basement apartment of 743 Hunts Point Bronx, New York.  He lives in the basement for the sole purpose of being available to provide services on a twenty-four (24) hour basis, and would not live there but for the fact that he was required to be on site at all times to meet the requirements of his job.

158.    Mr. Hernandez's duties as a superintendent and handyman include but are not limited to: a) collecting and taking out garbage on a daily basis; b) making minor apartment repairs and renovations including painting and roofing; c) fumigating the apartments; d) minor electrical work; e) maintaining building boilers; f) checking hallways for cleanliness and maintenance issues; g) minor tiling; h) minor plumbing; i) minor carpentry work; j) cleaning inside and outside the buildings; and k) addressing tenants' concerns.

159.    Mr. Hernandez works in excess of forty (40) hours per week, working on average sixty (60) hours per week in total – which equals twenty (20) hours per week of overtime work.

160.    In addition to his hours actively working, Mr. Hernandez is required to be on-call to deal with any situations or needs that arise in the buildings twenty-four (24) hours a day, seven (7) days a week.

161.    Despite routinely working approximately sixty hours per week, Mr. Hernandez does not receive any payment for his overtime hours, let alone the statutorily-mandated rate of

one-and-one-half times the regular rate of pay for each hour worked in excess of forty (40) hours per week.

162.    Mr. Hernandez is not compensated the legally mandated spread-of-hours-pay for hours pay for hours he worked in excess of ten (10) hours a day.

163.    In a willful scheme to camouflage their unlawful practices, on a weekly basis, Defendants requested that Mr. Hernandez sign and submit a timesheet which falsely state that he had worked forty (40) hours. Mr. Hernandez has consistently refused to sign the timesheets since they are inaccurate.

164.    Additionally, in a ploy to obfuscate Mr. Hernandez's hours, and to circumvent overtime provisions of the FLSA and NYLL, Defendants regularly require Mr. Hernandez to complete "side jobs" as a mandatory part of his employment. Side jobs include plumbing, tiling, plastering, masonry, renovations, and painting, among other assignment – not only in Mr. Hernandez's buildings, but in other buildings as well.

165.    Defendants required Mr. Hernandez to submit invoice statements and/or work orders with a description of the work needed to be performed and a price for same, but these invoices were a sham, as Defendants would never pay the requested sum. Instead, Defendants would arbitrarily underpay or fail to compensate Mr. Hernandez fair market rates.

166.    Often, Defendants required Mr. Hernandez to perform these side jobs outside of his regularly scheduled work hours, whereby he should have been paid for those hours at the mandatory statutory rate for overtime hours.

167.    Mr. Hernandez occasionally complained to Stahl as to the outstanding balances for side jobs. In response, Stahl would lie to Mr. Hernandez that he would be paid on a later date or silence him by saying "we could get someone else to do your job."

168.    In sum, in willful disregard of the FLSA, the NYLL, and the NYCCRR, Defendants failed to pay Mr. Hernandez overtime premiums at one-and-one-half times the regular rate of pay. Additionally, in violation of the NYWTPA, Defendants failed to maintain true and accurate payroll records, among other violations.

## FIRST CAUSE OF ACTION AGAINST DEFENDANTS
### (Failure to Pay Minimum Wage in Violation of the FLSA)

169.    Plaintiffs, FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

170.    Defendants have engaged in a widespread and continuing pattern and practice of violating the minimum wage provisions of the FLSA, as detailed in this Complaint.

171.    Defendants violated the rights of Plaintiff Mr. Ortiz and Class Members by failing to pay them the minimum wage for each hour worked in each discrete work week, in violation of the FLSA, 29 U.S.C. § 206(a)(l).

172.    Defendants' failure to pay Plaintiffs Mr. Ortiz and similarly situated Class Members the minimum wage was willful within the meaning of the FLSA, 29 U.S.C. § 255.

173.    Defendants are liable to Plaintiffs Mr. Ortiz and Class Members for their unpaid minimum wages, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION AGAINST DEFENDANTS
### (Unpaid Overtime under the FLSA)

174.    Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

30

175.    Defendants violated the rights of Plaintiffs and Class Members by failing to pay overtime compensation at the statutory rate of one-and-one-half times the regular rate of pay for each hour worked in excess of forty (40) per week, in violation of the FLSA, 29 U.S.C. § 207(a)(l).

176.    Defendants' failure to pay Plaintiffs and Class Members overtime compensation was willful within the meaning of the FLSA, 29 U.S.C. § 255.

177.    Defendants deliberately obfuscated Plaintiffs' and Class Members' hours and attempted to circumvent overtime provisions of the FLSA, through mandatory assignments of "side jobs" set to be performed outside their regularly scheduled hours. Accordingly, Defendants purposely avoided paying Plaintiffs and Class Members overtime wages.

178.    Defendants are liable to Plaintiff and Class Members for their unpaid overtime compensation, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION AGAINST DEFENDANTS
### (Unpaid Overtime under the NYLL and the NYCCRR)

179.    Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

180.    NYLL § 160 and 12 NYCCRR 142-2.2 require employers to compensate their employees at a rate not less than one-and-one-half times their regular rates of pay for any hours worked in excess of forty per week.

181.    Plaintiffs and Class Members were required to work in excess of forty (40) hours per week without being compensated for those hours at the statutorily required rate of one-and-a-half times their regular rate of pay.

182.    These practices were in violation of the NYLL and NYCCRR.

183.    These practices were willful and lasted for the duration of all relevant time periods.

184.    Defendants deliberately obfuscated Plaintiffs' and Class Members' hours and attempted to circumvent overtime provisions of the NYLL and NYCCRR, through mandatory assignments of "side jobs" set to be performed outside their regularly scheduled hours. Accordingly, Defendants purposely avoided paying Plaintiffs and Class Members overtime wages.

185.    By reason of the foregoing, Defendants are liable to Plaintiffs and Class Members for their unpaid overtime compensation, plus liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief.

## FOURTH CAUSE OF ACTION AGAINST DEFENDANTS
### (Violation of New York's Spread-of-Hours Requirement, 12 NYCCRR § 142-2.4)

186.    Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

187.    Under New York law, an "employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required [by New York's minimum wage law], for any day in which ... the spread of hours exceeds 10 hours." 12 NYCCRR § 142-2.4. Spread of hours is defined as "the interval between the beginning and end of an employee's workday" and "includes working time plus time off for meals plus intervals off duty." 12 NYCCRR § 142-2.18.

188.    Plaintiffs and Class Members were routinely required to work more than ten (10) hours a day, without being compensated for the legally mandated spread of hours pay.

189.    In willful disregard of the NYCCRR, Defendants failed to compensate Plaintiffs and Class Members an additional hour's pay for each day that Plaintiff and Class Members worked a spread of hours that exceeded ten (10) hours or a split shift.

190.    These practices were willful and lasted for the duration of the relevant time periods.

191.    This practice was in violation of 12 NYCCRR § 142-2.4.

192.    By reason of the foregoing, the Defendants are liable in an amount to be determined at trial, plus liquidated damages, costs and attorneys' fees.

### FIFTH CAUSE OF ACTION AGAINST DEFENDANTS
**(Failure to Provide Annual Notices in Violation of the NYLL § 195(1))**

193.    Plaintiffs, FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

194.    Pursuant to NYLL § 195(1)(a), every employer is required to provide each employee with an annual notice, setting forth, among other things, "the rate or rates of pay and basis thereof."

195.    Defendants knowingly failed to comply with this provision by failing to provide Plaintiffs and Class Members with any kind of annual notice whatsoever, let alone an annual notice meeting the requirements of NYLL § 195(1)(a).

196.    NYLL § 198(1)(b) provides that any employee not provided such notice may collect damages of $50.00 for each work day that the violation occurred or continued to occur, up to a total of $5,000.00 per employee (together with costs and reasonable attorneys' fees as well as appropriate injunctive and/or declaratory relief).

197.    During the course of Plaintiffs and Class Members' employment, Defendants consistently and willfully failed to provide them with adequate annual notices as required by New York law.

198.    Based on the foregoing, Defendants are therefore liable to Plaintiffs and Class Members in the amount of $5,000.00 per employee, plus reasonable attorney's fees and costs, and any other relief appropriate pursuant to NYLL § 198.

### SIXTH CAUSE OF ACTION AGAINST DEFENDANTS
**(Failure to Provide Wage Statements in Violation of the NYLL § 195(3))**

199.    Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

200.    Pursuant to NYLL § 195(3), every employer is required to:

> Furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

201.    Defendants knowingly failed to comply with this provision by failing to provide Plaintiffs and Class Members with wage statements meeting the requirements set forth above.

202.    NYLL § 198(1)(d) provides that any employee not provided appropriate wage statements may collect damages of $250.00 for each work day that the violation occurred or continued to occur, up to a total of $5,000.00 per employee, together with costs and reasonable attorneys' fees as well as appropriate injunctive and/or declaratory relief.

203.    During the course of Plaintiffs' and Class Members' employment, Defendants consistently and willfully failed to provide them with adequate wage statements as required by New York law.

204.    The paystubs provided to Plaintiffs and Class Members were woefully inadequate, and do not, and cannot satisfy the requirements of NYLL § 195(3).

205.    Defendants are therefore liable to Plaintiffs and Class Members in the amount of $5,000.00 per employee, plus reasonable attorney's fees and costs, and any other relief appropriate pursuant to NYLL § 198.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for the following relief:

a.    Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

b.    Certifying the New York Class in accordance with Fed. R. Civ. P. 23(b)(3) or (c)(4) with respect to the claims set forth above;

c.    Designating Plaintiffs Joaquin Ortiz, Jose Torres, Neyl Garcia, Jose B. Cabrera Gomez, Claudio A. Paulino Diaz, and Isaul Hernandez as Class Representatives;

d.    Designating Joseph & Norinsberg, LLC as Class Counsel;

e.    Issuing a judgment declaring that Defendants willfully violated the FLSA;

f.    Issuing a judgment declaring that Defendants willfully violated the NYLL;

g.    Issuing a judgment declaring that Defendants willfully violated the NYCCRR governing the compensation of superintendents;

h.    Issuing a judgment declaring that Defendants willfully violated New York "spread of hours" pay required under 12 NYCCRR § 142-2.4;

i.    Granting judgment in favor of Plaintiff Mr. Ortiz, FLSA Collective Action members, and the New York Class, and against Defendants, and awarding the amount of underpaid wages in accordance to the statutorily-mandated minimum rate of hourly pay for each hour worked;

j.    Granting judgment in favor of Plaintiffs, FLSA Collective Action members, and the New York Class, and against Defendants, and awarding the amount of unpaid overtime wages calculated at the rate of one-and-one-half times their regular rate of pay, multiplied by all hours worked in excess of the prescribed number of hours per week;

k.    Awarding liquidated damages to Plaintiff, FLSA Plaintiffs, and the New York Class, in an amount equal to the amount of unpaid overtime wages found owing to Plaintiff and the Class Members;

l.      Awarding all other available compensatory damages to Plaintiff, FLSA Collective Action members, and the New York Class, including, *inter alia*, all unpaid wages, lost interest owed, and liquidated and double damages by Defendants under the FLSA, NYLL, and NYWPTA;

m.      Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action;

n.      Awarding pre-judgment and post-judgment interest to Plaintiffs on these damages; and

o.      Awarding such further relief as this court deems just and proper.

Dated:   New York, New York
          July 26, 2018

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

By: _____
Chaya M. Gourarie, Esq.
Diego O. Barros, Esq.
225 Broadway, Suite 2700
New York, New York 10007
Tel: (212) 227-5700
Fax: (212) 406-6890
*Attorneys for Plaintiff and Putative Class*

TO:    Stuart A. Weinberger, Esq.
       Goldberg and Weinberger LLP
       630 Third Avenue, Suite 1801
       New York, New York 10017
       Tel: (212) 867-9595 (Ext. 313)
       Email: stuart575@aol.com